**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| KARLA THAIS SOTO-GULDI, BY HERSELF AND AS HEIR TO GABRIEL ALEJANDRO VASANDANI-SOTO, AND IN REPRESENTATION OF ARIANNA VASANDI-SOTO AND VALENTINA TORRES-SOTO, SAM VASANDI, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH GONZALEZ, JOHN DOE 1-15, KEVIN MENDEZ-HEREDIA, LUIS MORALES-GUARDARRAMA, ELVIN NUÑEZ-MACHADO, JOEL LAUREANO-CABRERA, JIM DOE 1-15, INSURANCE COMPANY 1-15, <br><br> Defendants. | CIVIL NO.  26-01035 (MAJ) <br><br> CIVIL ACTION <br><br> **JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT**

**TO THE HONORABLE COURT:**

**COME NOW** the Plaintiffs, represented by the undersigned counsel and very respectfully

ALLEGE, SET FORTH and PRAY:

### I.      NATURE OF THE CASE

1. This action is brought by the relatives of Gabriel Alejandro Vasandi-Soto ("Gabriel"), residents of Bayamon, Puerto Rico, seeking redress for the damages that resulted due to his wrongful death, during an intervention, that was conducted by agents of the Police of Puerto Rico ("PPR").  Specifically, the Plaintiffs assert that Gabriel died as a consequence of Defendants' excessive use of force, failure to intervene to stop the excessive use of force, failure to provide access to emergency medical care, failure to select, train, supervise and discipline, deliberate indifference and/or negligence, because Gabriel was the victim of

1

excessive use of force while he did not pose a threat of harm to anyone, when he was shot in the back by agents of the PPR and, then, left to suffer an agonizing death, without receiving any emergency medical attention.

2. Defendants' actions and/or omissions are the proximate cause of the physical, emotional, psychological and economic damages suffered by decedent and Plaintiffs.

3. Plaintiffs request this Honorable Court for compensatory and punitive damages, as well as equitable and declaratory relief and the other remedies provided by the applicable federal statutes, including attorney's fees, costs, litigation expenses, and interests.

## II.    JURISDICTION

4. This action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is founded upon 28 U.S.C. § 1331 and § 1343.

## III.    THE PARTIES

5. Plaintiff Karla Thais Soto-Guldi ("Karla") is Gabriel's mother. Plaintiffs Arianna Vasandi-Soto ("Arianna") and Valentina Torres-Soto ("Valentina") are Gabriel's sisters. They are underage and represented by their mother, Karla. Plaintiff Karla files the present Complaint seeking redress for Gabriel's damages (which she inherits), her own damages, an in representation of her underage daughters, seeking redress for their damages. Plaintiff Sam Vasandi ("Sam") is Gabriel's father.

6. Defendant Joseph Gonzalez ("Gonzalez") is the Superintendent of the Puerto Rico Police ("PPR"). Defendant Gonzalez is responsible for the selection, training, supervision and discipline of the agents of the PPR, and, therefore, he is liable for the damages suffered by the decedent and the plaintiffs. Defendants John Doe 1-15 are supervisory personnel

2

responsible for the selection, training, supervision and discipline of the agents of the PPR, and, therefore, they are liable for the damages suffered by the decedent and the plaintiffs.

7. Defendant Antonio Lopez-Figueroa was the Superintendent of the Puerto Rico Police ("PPR") before Defendant Gonzalez, and as such, he was responsible for the selection, training, supervision and discipline of the agents of the PPR, and, therefore, he is liable for the damages suffered by the decedent and the plaintiffs.

8. Defendants Gonzalez, Lopez-Figueroa, and John Doe 1-15, will be collectively referred to as the "Supervisory Defendants". The identities of Supervisory Defendants John Doe 1-15 are unknown, at this moment.

9. Defendants Kevin Mendez-Heredia ("Mendez"), Luis Morales-Guardarrama ("Morales"), Elvin Nuñez-Machado ("Nuñez") and Joel Laureano-Cabrera, ("Laureano") are agents of the PPR, who participated in the intervention that resulted in Gabriel's death. Defendants Jim Doe 1-15 are PPR agents who, either, participated in the intervention, or arrived at the scene, after Gabriel was shot, and failed to take steps to provide emergency medical care to Gabriel. Defendants Mendez, Morales, Nuñez, Laureano, and John Doe 1-15, will be collectively referred to as the "Officer Defendants". The identities of Officer Defendants Jim Doe 1-15 are unknown, at this moment.

10. Defendants Insurance Company 1-15 are insurance companies that issued policies that cover the damages claimed by the plaintiffs.

### IV.    THE FACTS

11. By January 23rd, 2025, the Supervisory Defendants had established, or maintained, a custom of selecting officers that had a propensity for use of excessive force. Upon information and belief, the Supervisory Defendants were not adequately screening, nor

investigating candidates to become officers before selecting them. The failure to select officers, without screening for their propensity to use excessive force, places the citizens upon which the police officers intervene at risk of harm, in violation of the constitutional rights of every person.

12. By January 23rd, 2025, the Supervisory Defendants had established, or maintained, a custom of not providing adequate training to their officers on the Use of Force. Upon information and belief, although the police officers were provided with target shooting practice, they were not adequately trained on the Use of Force, particularly when, or how, to use it and on the provision of access to emergency medical services to citizens against whom officers employ force. The failure to train officers, on the Use of Force and the subsequent access to emergency medical care to suspects, allows and encourages officers to use excessive force, and places the citizens upon which the police officers intervene at risk of harm, in violation of the constitutional rights of every person.

13. By January 23rd, 2025, the Supervisory Defendants had established, or maintained, a custom of not providing adequate supervision to their officers on the field. Upon information and belief, the Supervisory Defendants allowed officers on the field to operate without supervision from supervisors, which is a basic component of police work, and particularly during interventions, in which deadly force is used because supervisors can guide their officers and assure that the officers act correctly.

14. By January 23rd, 2025, the Supervisory Defendants had not implemented nationally accepted policies regarding the Use of Force by police officers. In particular, the Supervisory Defendants did not implement any kind of Use of Force Review Board, nor the policy of requiring the preparation of reports on the use of force. These boards are

committees that review the circumstances leading up to and during a shooting incident. The reports on the use of force are the basic tool used to review officers' conduct on the field. In other words, the Supervisory Defendants followed the custom of not reviewing the Use of Force by their officers. Upon information and belief, the Officer Defendants had previously engaged in uses of force that were not reviewed. The failure to supervise officers, by reviewing their uses of force, allows and encourages officers to use excessive force, and places the citizens upon which the police officers intervene at risk of harm, in violation of the constitutional rights of every person.

15. By January 23rd, 2025, the Supervisory Defendants had established, or maintained, an inadequate disciplinary system in which valid citizen complaints of use of excessive force by their officers were dismissed by the Supervisory Defendants without sanctioning the officers. Upon information and belief, the Officer Defendants had previously engaged in uses of excessive force and were not adequately disciplined, leading the officers to believe that they could employ excessive force without any consequences. The failure to discipline officers, by dismissing valid citizen claims without sanctioning the officers, allows and encourages officers to use excessive force, and places the citizens upon which the police officers intervene at risk of harm, in violation of the constitutional rights of every person.

16. Before and by January 23rd, 2025, the Supervisory Defendants were the policymakers for the PPR. They failed to establish and/or execute policies on: the training on the use of deadly force; the use of deadly force; the review of the use of force, and; the provision of access to emergency medical care to wounded suspects.  By said date, they had failed to establish policies on the review of the use of deadly force and on its use by officers and/or adopted the customs established by his predecessors.

17. The Supervisory Defendants knew, or should have known, that their failure to establish such policies would result in field officers unreasonably utilizing deadly force, and an increased risk to public safety. These failures increased the risk to public safety by allowing officers to use force that is not reasonable in light of the particular circumstances.

18. On January 23rd, 2025, eighteen-year-old Gabriel was driving a vehicle when Defendants Mendez, Morales, Nuñez and Laureano and/or other officers of PPR, ordered him to stop. After Gabriel stopped and stayed inside the car with his back to the officers, Defendants Mendez, Morales and Nuñez shot at him, while Defendant Laureano aimed at him and failed to stop his fellow officers to shoot at Gabriel. Gabriel received one shot in the back. At that moment, Gabriel was unarmed and with his back to the officers. Defendants Mendez and Nuñez made three shots and Defendant Morales made one shot. At the moment, plaintiffs do not know which Defendant made the shot that hit Gabriel.

19. These officers and Officers John Doe 1-15, who arrived at the scene, failed to provide Gabriel with access to emergency medical care, and did not even call an ambulance during the long period of time in which he was left to die. Gabriel suffered an agonizing death. Gabriel would not have died if he had been provided with access to emergency medical care, which was readily accessible.

20. His parents and sisters have suffered physically, emotionally, and mentally, because of the death which includes, but is not limited to, long periods of insomnia, crying, anxiousness, and sadness, from mourning the untimely death of Gabriel.

## V.    CLAIMS:

21. All defendants are solely and jointly responsible for the harm and pain suffered by the decedent and the plaintiffs. The Officer Defendants were acting in their capacity as agents,

servants, and employees of the PPR, under the direction and control of the Supervisory Defendants. The Supervisory Defendants failed to properly select, train, supervise and discipline, their officers. They are, all, being sued in their individual capacities.

22. The type of incident that gives rise to the present complaint is not an isolated one in the PPR police force.  Instances like this, of violation of civil rights, have occurred numerous times in the past and to this day, the Supervisory Defendants have not taken adequate measures to correct it. They have failed to implement proper policies in order to stop or even deal with this type of police conduct.

**Use of Excessive Force, Failure to Intervene, and Failure to Provide Emergency Medical Care, in Violation of The United States Constitution**

23. The plaintiffs incorporate, herein, each of the aforementioned paragraphs.

24. Acting under color of state law, Defendants Mendez, Morales and Nuñez fired their weapons at the decedent and shot decedent in the back.  Defendant Laureano did not shoot at Gabriel, but aimed at Gabriel and failed to intervene to stop his fellow officers from shooting at Gabriel. After Gabriel was shot, all of the officers that were present at the scene failed to provide him with access to emergency medical care for an unreasonable amount of time.  As a result, Gabriel died.

25. As a direct and proximate result of the aforementioned unlawful actions and omissions of Defendants Mendez, Morales, Nuñez and Laureano, the decedent suffered grievous bodily harm and was deprived of his right to be free from unreasonable seizures and the excessive use of force, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

26. As a direct result of the conduct of Defendants Mendez, Morales, Nuñez, Laureano, and Jim Doe 1-15, the decedent suffered a gunshot wound and an agonizing death.

27. Defendants Mendez, Morales, Nuñez, Laureano, and Jim Doe 1-15, acted with deliberate indifference to the decedent's rights, thus entitling him to an award of punitive damages against the individually named defendants.

28. Defendants Mendez, Morales, Nuñez, Laureano, and Jim Doe 1-15, are liable to decedent for the payment of compensatory damages consequent to his suffering. Decedent's damages are estimated in five million dollars ($5,000,000) which are inherited by his parents. Judgment is sought for compensatory damages in the amount of five million dollars ($5,000,000) for each of Gabriel's parents, Karla and Sam, and one million and seven hundred fifty thousand dollars ($1,750,000.00) for each of Gabriel's sisters, plus costs of this action, attorney's fees and such other relief as the Court deems fair and appropriate under the circumstances.

29. Defendants Mendez, Morales, Nuñez, Laureano, and Jim Doe 1-15, are liable to the decedent for the payment of punitive damages consequent to their actions. Judgment is sought for punitive damages in the amount of ten million dollars ($10,000,000.00), plus costs of this action, attorney's fees, and such other relief, as the Court deems fair and appropriate under the circumstances. If the plaintiffs prevail, they are entitled to an award of attorney fees pursuant to 42 U.S.C. section 1988.

**Failure To Select, Train, Supervise, and Discipline, in Violation of The United States Constitution**

30. The plaintiffs incorporate herein, each of the aforementioned paragraphs.

31. The Supervisory Defendants were delegated the power and authority to control the conduct of the Officer Defendants, by the PPR, and failed to properly select, train, supervise and discipline their officers.

8

32. The Supervisory Defendants are the policymakers for the PPR and their failure to affirmatively act in the face of transgressions about which they know or should have known, establishes the policy of PPR of condoning or otherwise tolerating constitutionally violative conduct in general and specifically the constitutionally violative conduct alleged in this complaint. Had they affirmatively acted to properly select, train, supervise and/or discipline the officers under their command, the constitutional deprivation of the decedent would not have occurred.

33. The Supervisory Defendants are, or should have been aware, of the practice of their officers of using excessive force and of not providing access to emergency medical care to wounded suspects, and nevertheless, they did nothing to prevent or stop such practices.

34. The Supervisory Defendants are, or should have been aware, that their officers were not adequately selected to screen candidates with a propensity for using excessive force, and that once selected, they were not adequately trained, supervised and disciplined on the Use of Force and providing access to emergency medical care to wounded suspects, and nevertheless, they did nothing to prevent or stop such practices.

35. In their failures, the Supervisory Defendants recklessly and negligently disregarded known facts, or, alternatively, were deliberately indifferent to a substantial risk of the constitutional violation of which they knew or should have known, and their culpability caused the constitutional violation of the decedent.

36. As a direct and proximate result of the policies, customs, practices, and usages established, and/or followed, by the Supervisory Codefendants, as aforementioned, the decedent suffered an agonizing death.

9

37. The Supervisory Defendants and their insurers are legally liable to the decedent for the payment of compensatory damages consequent to their actions. Decedent's damages are estimated in five million dollars ($5,000,000) which are inherited by his parents. Judgment is sought for compensatory damages in the amount of five million dollars ($5,000,000) for each of Gabriel's parents, Karla and Sam, and one million and seven hundred fifty thousand dollars ($1,750,000.00) for each of Gabriel's two sisters, plus costs of this action, attorney's fees and such other relief as the Court deems fair and appropriate under the circumstances.

38. The Supervisory Defendants and their insurers are legally liable to the decedent for the payment of punitive damages consequent to their actions. Judgment is sought for punitive damages in the amount of ten million dollars ($10,000,000.00), plus costs of this action, attorney's fees, and such other relief, as the Court deems fair and appropriate under the circumstances. If the plaintiffs prevail, they are entitled to an award of attorney fees pursuant to 42 U.S.C. section 1988.

**WHEREFORE**, it is respectfully requested that having considered the allegations of this Complaint and the applicable law, the Court orders any relief that it seems just, proper, and fair.

In San Juan, Puerto Rico, this April 30, 2026.

JROLMO LLC
261 Domenech, SJ PR 00918
787.447.9914/jrolmo1@gmail.com

*f/***JOSÉ R. OLMO RODRÍGUEZ**
USDC-PR 213405